UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ALFRED MILANO and LYNN MILANO,

                Plaintiffs,

     -against-                             **MEMORANDUM AND ORDER**
                                                           20-CV-179 (RPK) (RER)

STATE FARM FIRE AND CASUALTY
COMPANY,

                Defendant.
-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

       After a fire severely damaged their home, plaintiffs Alfred and Lynn Milano sought to recover benefits under their insurance policy. Defendant State Farm Fire and Casualty Company ("State Farm") acknowledged coverage, but the parties could not agree on the amount of the loss. They agreed to convene a panel to appraise the damage. Each party selected an appraiser. The parties then had a court appoint an umpire to resolve any disagreement between the appraisers. A majority of that panel—the umpire and State Farm's appraiser—determined that plaintiffs were entitled to $1,013,936.07 as replacement cost value or $834,466.65 as actual cash value.

       Plaintiffs move to vacate this appraisal award on the grounds that no one disclosed that the umpire had a past connection to State Farm's appraiser. Specifically, from about 1999 to 2009, the umpire had worked as the NY/NJ general manager for Woods Restoration, Inc.—a now-defunct company where State Farm's appraiser had been one of the principals. Because this relationship was not material, and because it was adequately disclosed, plaintiffs' motion is denied.

## BACKGROUND

### A. Factual Background

In May 2017, State Farm issued a homeowner's insurance policy to plaintiffs Alfred and Lynn Milano. *See* Renewal Certificate at 5 (Dkt. #19-1). Subject to certain conditions, the policy covered damages to plaintiff's dwelling and personal property from June 2017 to June 2018. *See* Homeowners Policy at 3-25 (Dkt. #19-1).

In November 2017, a fire damaged plaintiffs' home. *See* Compl. ¶ 9 (Dkt. #1-1). State Farm acknowledged coverage and estimated the replacement cost value to be $1,744,454.24, *see id.* ¶¶ 12, 16, or an actual cash value of $1.472,359.66, *see* Def.'s Mem. of L. in Opp'n to Pl.'s Mot. to Vacate Appraisal Award at 2 (Dkt. #19-13) ("Def.'s Memo"). Plaintiffs did not agree; they thought the replacement cost value was more than $2,800,000. *See* Compl. ¶ 20; Pl.'s Mem. of L. in Supp. of Mot. to Vacate the Appraisal Award at 1 (Dkt. #18) ("Pls.' Memo").

Plaintiffs demanded an appraisal of the amount of the loss. *See* Compl. ¶ 17; Pls.' Memo at 1. Under the insurance policy, either party could "demand that the amount of the loss be set by appraisal." *See* Homeowners Policy at 14. The policy described this process: First, the parties would each "select a competent, disinterested appraiser." *Ibid.* Next, the two appraisers would "select a competent, impartial umpire," or if they could not agree, petition a "judge of a court of record . . . to select an umpire." *Ibid.* The appraisers would then each attempt to "set the amount of the loss." *Ibid.* If they disagreed, they would "submit their differences to the umpire," and "any two of the[] three" would "set the amount of the loss." *Ibid.* Defendant agreed to appraise the amount of the loss through that process. *See* Troisi Letter (Aug. 14, 2019) (Dkt. #18-2).

The parties each retained an appraiser. Plaintiffs selected Jeffrey Pellet of Professional Insurance Estimating & Appraisals. *See* Pls.' Memo at 2; Def.'s Memo at 2. Defendant selected Timothy Woods of J.S. Held, LLC. *See* Pls.' Memo at 2; Def.'s Memo at 2-3.

These appraisers could not agree on an umpire, so in October 2019, the parties petitioned the Supreme Court of New York, Kings County, to appoint one. *See* Notice of Pet. (Oct. 24, 2019) (Dkt. #18-4). To assist the court, each party offered a slate of candidates. *See id.* ¶¶ 14-15. State Farm recommended Ed Christenson of Insurance Restoration Consultants, Inc., among others. *See id.* ¶ 14. State Farm also submitted an affidavit from Timothy Woods. *See* Aff. of Timothy Woods (Dkt. #19-7). Mr. Woods stated that he "believe[d] that [State Farm's candidates] have no potential or actual conflicts of interest, have previously served as appraisers and umpires in the past on other matters without objection, and have the requisite knowledge and experience to assist in resolving a building damage valuation dispute." *Id.* ¶ 14.

Mr. Woods attached Mr. Christenson's curriculum vitae as an exhibit to his affidavit. *See ibid.*; Ed Christenson Curriculum Vitae (Dkt. #19-2). Under "Professional Experience," Mr. Christenson listed that he worked as a NY/NJ General Manager at Woods Restoration, Inc. starting in 1999. *Ibid.* There, he was "[r]esponsible for day-to-day operations of the NY/NJ Region," and he "[p]repare[d] remediation and repair estimates." *Ibid.* He left this job to work at Maxons Restorations, Inc. in 2009 and moved on to Insurance Restoration Consultants, Inc. in 2016. *Ibid.* The curriculum vitae did not contain additional details regarding Woods Restoration, Inc., but business records submitted by plaintiffs in connection with their motion to vacate the appraisal award indicate that Timothy Woods was one of the company's principals, along with Martin Woods and Phillip C. Woods. *See* Westlaw, Corporate Records & Business Registrations (Dkt. #18-10). The records also indicate that Woods Restoration, Inc. ceased operation in 2011. *See ibid.*

Plaintiffs objected that Mr. Christenson would not "be an unbiased umpire." *See* Resp't's Reply to Pet. to Appoint an Umpire ¶ 18 (Dkt. #19-8). Plaintiffs argued that Mr. Christenson's

3

"current employer does most of, if not all, its work on behalf of insurance companies." *Ibid.* They also argued that Mr. Christenson had "a history of performing work solely for insurance carriers," including at Maxons Restorations, Inc. *Ibid.* Plaintiffs did not specifically object to Mr. Christenson's past employment with Woods Restoration, Inc. *See ibid.*

In December 2019, the court appointed Mr. Christenson to serve as the umpire. *See* Pls.' Memo at 2; Def.'s Memo at 4. The appraisers attempted to assess plaintiffs' loss, but they could not agree on an amount, so Mr. Christenson resolved their dispute. *See* Umpire's Decision at 2 (Dkt. #19-9). In April 2020, Mr. Christenson found the replacement cost value of plaintiffs' damage to be $1,013,936.07, *see id.* at Attachment A, and the actual cash value to be $834,466.65, *see id.* at Attachment B. Mr. Christenson and Mr. Woods signed this award. *See id.* at 4.

### B. Procedural History

In November 2019, plaintiffs filed this lawsuit as an action for breach of contract in Kings County. *See* Compl ¶ 6. Plaintiffs alleged that State Farm owed them benefits under their insurance policy, sought damages, and requested other relief. *See id*. ¶¶ 6, 8, 28, 36-54. At the time plaintiffs filed suit, the parties had petitioned the Supreme Court of New York to appoint an umpire, but that court had not yet appointed Mr. Christenson. Plaintiffs requested that their lawsuit be stayed and that the parties be ordered to undertake an appraisal as outlined in plaintiffs' insurance policy. *Id*. ¶ 35.

In January 2020, State Farm removed plaintiffs' lawsuit to this Court. *See* Notice of Removal at 1 (Dkt. #1). Proceedings were stayed pending the completion of the appraisal process. *See* Mot. to Stay (Dkt. #9); Order (Jan. 29, 2020). That stay was lifted after the appraisal process ended. *See* Min. Entry & Order (July 2, 2020). In August 2020, plaintiffs moved to vacate the appraisal award on the grounds that "Mr. Christenson worked for the Woods' restoration company" for "at least ten documented years." Pls.' Memo at 4.

4

**DISCUSSION**

Plaintiffs' motion to vacate the appraisal award is denied. The Federal Arbitration Act permits a court to vacate an arbitration award only (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators refused to postpone the hearing, refused to hear pertinent and material evidence, or otherwise prejudiced the parties; or (4) where the arbitrators exceeded their powers. 9 U.S.C. § 10; *Wall Street Assocs. L.P. v. Becker Paribas, Inc.*, 27 F.3d 845, 849 (2d Cir. 1994). "Evident partiality" exists only "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const. Corp. v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984). "The party challenging the award must prove the existence of evident partiality by clear and convincing evidence." *Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 505 (2d Cir. 2018). In addition, when a party attempts to prove evident partiality with evidence discovered after arbitration, vacatur is not appropriate if the party "should have known" the facts contained in that evidence, or "could have learned" the facts contained in that evidence "just as easily before or during the arbitration" as "after it lost its case." *Id.* at 506. Plaintiffs contend that the appraisal award must be vacated because Mr. Christenson, the neutral umpire for the appraisal, worked for ten years at the restoration company of Mr. Woods, who served as State Farm's appraiser. But the past professional relationship on which plaintiffs rely does not establish evident partiality, and in any event, plaintiffs could have learned all the facts on which they now rely as easily before or during the arbitration as after they obtained an unfavorable result. Accordingly, plaintiffs' motion is denied.

I.  **Plaintiffs have not established that Mr. Christenson was evidently partial because of his past professional relationship with Mr. Woods.**

Plaintiffs argue that the appraisal award should be vacated because Mr. Christenson's undisclosed past professional relationship with Mr. Woods rendered him evidently partial to State Farm. But "the FAA does not proscribe all personal or business relationships between arbitrators and the parties" or their representatives. *Id.* at 507. On the contrary, because "[t]he best informed, and most capable potential arbitrators are repeat players with deep industry connections," who are often part of "tightly knit professional communities," there is some "[j]udicial tolerance of relationships between arbitrators and party representatives," *id.* at 507-508, and no "*per se* rule requiring vacatur of an award whenever an undisclosed relationship is discovered," *Lucent Techs*, *Inc. v. Tatung Co.*, 379 F.3d 24, 30 (2d Cir. 2004). Rather, whether an undisclosed past relationship establishes evident partiality depends on the "materiality" of the relationship. *Certain Underwriting Members of Lloyds of London*, 892 F.3d at 506; *see, e.g.*, *Nat'l Indem. Co. v. IRB Brasil Resseguros S.A.,* 164 F. Supp. 3d 457, 478 (S.D.N.Y. 2016) ("It is not the nondisclosure itself but the materiality of the undisclosed facts that controls the evident partiality inquiry."). "In ascertaining whether a relationship is 'material' . . . a court must focus on the question of how strongly that relationship tends to indicate the possibility of bias in favor or against one party, and not how closely that relationship appears to relate to the facts of the arbitration." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 75 (2d Cir. 2012). "The evident-partiality standard" is not satisfied where a relationship is "trivial," *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150 (1968) (White, J., concurring), "not suggestive of bias," or "too insubstantial to warrant vacating the award." *Scandinavian Reinsurance Co.*, 668 F.3d at 72-73.

Under these principles, plaintiffs cannot rely on Mr. Christenson's past professional connection to Mr. Woods to establish that Mr. Christenson was evidently partial to State Farm, because plaintiffs have not established that the prior relationship was material. Plaintiffs do not contend that Mr. Christenson "had any familial, business, or employment relationship" with State Farm itself, *Nat'l Indem. Co. v. IRB Brasil Reseguros S.A.*, 675 F. App'x 89, 90 (2d Cir. 2017) (summary order). Rather, they contend that Mr. Christenson was evidently partial to State Farm because of Mr. Christenson's prior professional connection to Mr. Woods—the appraiser that State Farm had retained. But Mr. Christenson's employment at the now-defunct firm where Mr. Woods was a principal ended in 2009 at the latest. *See* Pls.' Memo at 5; Def.'s Memo at 8. "When an arbitrator's relationship with a party materially ends" before the arbitrator is appointed, "one cannot say that a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Certain Underwriting Members of Lloyds of London*, 892 F.3d at 506 (brackets and marks omitted). Likewise, "past contacts do not amount to material bias." *Id.* at 507; *cf. Lucent Techs.*, 379 F.3d at 31 (affirming award where arbitrator "had completed his service as an expert witness" for a party before serving as arbitrator); *Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, No. 20-CV-2772, 2020 WL 5237800, at *3-*4 (S.D.N.Y. Sept. 2, 2020) (declining to vacate award where arbitrator had represented affiliate of party but their "relationship as attorney and client" had ended by the time of "the first substantive activity in the case"). And plaintiffs have put forward no evidence that Mr. Christenson's connection to Mr. Woods was anything more than professional. *Cf. Landmark Ventures, Inc. v. InSightec, Ltd.*, 619 F. App'x 37, 39-40 (2d Cir. 2015) (summary order) (affirming award where association between arbitrator and party's representatives was "both attenuated and strictly professional"); *Nat'l Indem. Co.*, 675 F. App'x at 90-91 (affirming award where arbitrator's relationships with various parties were

"professional"); *Merck & Co v. Pericor Therapeutics, Inc.*, No. 16-CV-22, 2016 WL 4491441, at *9 (S.D.N.Y. Aug. 24, 2016) (concluding that neutral arbitrator was not biased in party representative's favor because "nothing in the record suggests that [their] relationship . . . was anything other than professional in nature").

Plaintiffs argue that Mr. Christenson's past employment at Woods Restoration, Inc., nevertheless establishes evident partiality because, they assert, that job must have "caused substantial financial gain and advantageous career employment for Mr. Christenson as this job . . . appeared to be Mr. Christenson's gateway into the insurance industry." Pls.' Memo at 5. But the assertion that Mr. Christenson would have been partial toward State Farm because he must have received "substantial financial gain and advantageous career employment" as a result of his having been employed at Woods Restoration is speculative, *Scandinavian Reinsurance Co.*, 668 F.3d at 72 ("[A] showing of evident partiality 'may not be based simply on speculation.'"); *cf. Schuyler Line Navigation Co., LLC*, 2020 WL 5237800, at *4 ("[U]nlike a familial relationship, the Court is not 'bound by [a] strong feeling' that attorneys are 'more often than not' partial or biased on behalf of their former clients.").

While plaintiffs aver that they "are positive that deeper roots would be uncovered" were they "allowed to explore the relationship between Mr. Woods and Mr. Christenson further," Pls.' Memo at 5, the mere "specter of potential but totally unknown conflicts" cannot justify vacatur. *Env't Chem. Corp. v. Coastal Env't Grp., Inc.*, No. 18-CV-3082, 2018 WL 4378439, at *9 (S.D.N.Y. Sept. 14, 2018); *see Lucent Techs*, 379 F.3d at 32 (refusing to award "post-award discovery into potential arbitrator bias" in the absence of "clear evidence of impropriety").

Lastly, plaintiffs cannot rely on "the outcome of the appraisal" here to establish evident partiality. *See* Pls.' Memo at 4. "[A]dverse rulings alone rarely evidence partiality," because "the

fact that one party loses at arbitration does not, without more, tend to prove that an arbitrator's failure to disclose some perhaps disclosable information should be interpreted as showing bias against the losing party." *Scandinavian Reinsurance Co.*, 668 F.3d at 75. Plaintiffs emphasize that the panel's decision differed from prior party estimates. *See* Pls.' Memo at 2-3. But the parties presumably sought an arbitral panel in part for its "expertise." *Certain Underwriting Members of Lloyds of London*, 892 F.3d at 506. That Mr. Christenson "consistently relied on evidence and reached conclusions favorable" to one party does not "establish evident partiality." *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 500 F.2d 921, 923 (2d Cir. 1974).

## II. The relationship between Mr. Christenson and Mr. Woods was adequately disclosed.

In any event, plaintiffs are not entitled to vacatur of the arbitration award in this case based on the relationship between Mr. Christenson and Mr. Woods because plaintiffs were, at minimum, on inquiry notice as to that relationship. A party may not assert evident partiality based on an arbitrator's undisclosed relationship as a basis for overturning an arbitral award when the party failed to object to the relationship before arbitration, and it "should have known of the relationship, or could have learned of the relationship just as easily before or during the arbitration" as "after it lost its case." *Certain Underwriting Members of Lloyds of London*, 892 F.3d at 506; *see Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 540 (2d Cir. 2016). The central question is whether "a party ha[d] knowledge of facts possibly indicating bias or partiality" before arbitration. *Miller v. UBS Fin. Servs. Inc.*, No. 18-CV-8415, 2019 WL 1988527, at *5 (S.D.N.Y. May 6, 2019).

Applying those principles here, plaintiffs are not entitled to vacate the arbitration award because plaintiffs could have learned of the relationship between Mr. Christenson and Mr. Woods "just as easily before or during the arbitration" as afterward, *Certain Underwriting Members of*

9

*Lloyds of London*, 892 F.3d at 506. Defendant's petition to appoint an umpire attached Mr. Christenson's curriculum vitae as an exhibit. *See* Aff. of Timothy Woods ¶ 14. That curriculum vitae stated that Mr. Christenson worked as the NY/NJ General Manager at Woods Restoration, Inc. from 1999 until 2009. *See ibid.* Those submissions "made clear" that Mr. Christenson worked as an employee at a company named "Woods Restoration, Inc." *See Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 702 (2d Cir. 1978) ("Whatever connection [one company] had with [a boat subject to arbitration] was made clear from the documents submitted by [a party] at the arbitration.").

From there, it was "easily ascertainable" that Woods Restoration, Inc. was owned and operated in part by Mr. Woods, *ibid.* For one thing, the company shares Mr. Woods's family name. For another, Mr. Woods' status as a principal at Woods Restoration was publicly available information, contained in the same business records that plaintiffs submit as evidence today. *See* Westlaw, Corporate Records and Business Registrations. Such information is at least as ascertainable as "the name of [the] president" for a company with a potential interest in the arbitration or the record of "past service together on arbitration panels" from "published awards," and newly discovered evidence of this kind does not warrant vacatur. *Andros*, 579 F.2d at 703.

While it would have been desirable for State Farm to be "more forthcoming" by calling attention to the connection between Woods Restoration and Mr. Woods, "[a] party is not entitled to the 'complete and unexpurgated business biograph[ies]' of the arbitrators whom the parties have selected," *Scandinavian Reinsurance Co.*, 668 F.3d at 77-78, and State Farm "shared at least enough to put [plaintiffs] on inquiry notice," *LGC Holdings, Inc. v. Julius Klein Diamonds, LLC*, 238 F. Supp. 3d 452, 468 (S.D.N.Y. 2017). Because plaintiffs had these facts before arbitration, but did not object to Mr. Christenson on these grounds, they cannot now vacate the award based

on his relationship with Mr. Woods. *Cf. id.* at 468-69 (refusing to vacate award on grounds that neutral arbitrator did not disclose that he and party arbitrator "were partners in a 'multi-million dollar diamond venture'" because the neutral arbitrator had shared that he had "done business with" the party arbitrator); *Miller*, 2019 WL 1988527, at *6 (declining to vacate award on grounds that arbitrator might have currently owned securities in UBS where complaining party "was put on notice that [arbitrator] or a family member owned some UBS securities at some point"); *First Cap. Real Est. Invs., L.L.C. v. SDDCO Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 194 (S.D.N.Y. 2019) (declining to vacate award on grounds that arbitrator "had previously worked for Metropolitan Life" where her disclosure report stated "that she was previously employed by Metropolitan Life").

## CONCLUSION

Plaintiffs' motion to vacate the appraisal award is denied.

SO ORDERED.

                                                            */s/ Rachel Kovner*
                                                         RACHEL P. KOVNER
                                                         United States District Judge

Dated:         April 29, 2021
                 Brooklyn, New York